UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES ANDEREGG — PLAINTIFF

V. — CIVIL ACTION NO. 2:26-CV-76-KHJ-RPM

BLUE CROSS BLUE SHIELD OF OKLAHOMA — DEFENDANT

ORDER

Before the Court is Defendant Blue Cross Blue Shield of Oklahoma's ("BCBS") [5] Motion to Dismiss. For the reasons below, the Court GRANTS in part and DENIES in part the [5] Motion.

I. Background

This action arises from an insurance coverage dispute. On the morning of March 21, 2025, Plaintiff James Anderegg's ("Anderegg") son ("J.A.") awoke with sharp chest pain radiating to his left shoulder and jaw. Am. Compl. [3] ¶ 4. Anderegg rushed him to the local hospital in Hattiesburg, Mississippi. *Id.* ¶ 5. There, the local medical team diagnosed J.A. with myocarditis, a condition treatable only by a pediatric cardiologist. *Id.* The doctor determined J.A.'s exigent symptoms and the more-than-100-mile distance to the nearest pediatric cardiologist required air travel. *Id.* ¶ 6.

Following J.A.'s treatment, Anderegg filed a claim with BCBS under his healthcare plan, which named J.A. as an insured, seeking coverage for associated costs. *Id.* ¶¶ 7–8. BCBS denied Anderegg's claim, explaining that the plan did not

cover out-of-area, non-emergency care. *See* Claim Denial [3-2]. The plan only covers services rendered outside Oklahoma in three explicit circumstances, including emergency or urgent care.[1] [5-1] at 7. Furthermore, the plan only covers services it considers "Medically Necessary." *Id.* at 39. The plan defines "Medically Necessary" as services that are: (1) in accordance with generally accepted standards; (2) clinically appropriate in terms of type, frequency, and so on; and (3) not more costly than alternatives "at least as likely" to produce equivalent results. *Id.* at 104. The plan adds that "the fact a Physician or other Provider prescribes, orders, recommends or approves a service or supply does not, of itself, make it Medically Necessary or a Covered Service." *Id.* at 60. Lastly, the plan states that air ambulance services are covered only when "Medically Necessary" and terrain, distance, physical condition, or other circumstances require the use of air ambulance rather than ground services. *Id.* at 32. BCBS claims this language bars Anderegg's claim. *See* Def.'s Mem. in Supp. [6] at 5.

Following the denial, Anderegg's counsel notified BCBS he intended to appeal and requested copies of documents relevant to the denied claim — a request BCBS never answered. [3] ¶ 13. Counsel later contacted BCBS again and provided more information supporting Anderegg's claim but fared no better. *Id.* ¶¶ 14–15. After months of silence, Anderegg filed this lawsuit. Pl.'s Resp. in Opp'n [8] at 6.

[1] The plan defines "Emergency Care" as "[t]reatment for an injury, illness[,] or condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that a reasonable and prudent layperson could expect the absence of medical attention to result in: serious jeopardy to the Subscriber's health . . .; serious impairment to bodily function; or serious dysfunction of any bodily organ or part." BCBS Plan [5-1] at 100–01.

## II. Standard

A motion to dismiss under Rule 12(b)(6) asserts that the plaintiff has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion under Rule 12(b)(6), "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation modified). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* The Court must accept all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support. *Id.*

Ordinarily, a Court decides a motion under Rule 12(b)(6) by looking only to the allegations of the complaint. *See* Fed. R. Civ. P. 12(d) (limiting record on motions under Rule 12(b)(6) or 12(c) to matters contained in the pleadings). But some documents outside the pleadings may be considered under Rule 12(b)(6). For example, documents attached to a motion to dismiss that are "referred to in the plaintiff's complaint and . . . central to her claim," are considered part of the pleadings. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir.

2004). Here, BCBS attached the plan to its Motion to Dismiss. The Court can consider the plan without converting the motion into one for summary judgment.

III. Analysis

Anderegg brings three claims against BCBS: (1) breach of contract (Claim for Policy Benefits); (2) bad-faith failure to pay policy benefits; and (3) willful breach of contract. [3] ¶¶ 4–6. BCBS argues each claim warrants dismissal for failing to state plausible claims for relief. *See generally* [6]. The Court addresses each claim in turn.

A. Breach of Contract

Anderegg sufficiently states a claim for breach of contract. In Mississippi, a breach of contract must allege: (1) the existence of a valid and binding contract; and (2) that the defendant breached it. *Rogers v. Nationstar Mortg. LLC*, No. 2:16-CV-197-KS-MTP, 2017 WL 11609613, at *3 (S.D. Miss. Mar. 7, 2017). Mississippi treats insurance policies as contracts which "are to be enforced according to their provisions." *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004). In interpreting policies, courts give words "their plain, ordinary, and popular meaning, not a philosophical or scientific meaning." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 688 (5th Cir. 2014) (quoting *Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253 (Miss. Ct. App. 2006)). "Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). But "if a contract is clear and

unambiguous, then it must be interpreted as written." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

The parties agree Anderegg plausibly alleges the existence of the insurance contract. [8] at 11; [6] at 2. The remaining question is whether he plausibly alleges its breach.

As BCBS sees it, Anderegg's breach allegations fall short because they do not show that J.A.'s transport constituted "emergency or urgent care" that was "Medically Necessary." [6] at 7–8. Without that showing, BCBS argues, there was no coverage.

The Court agrees that the claim fails if the policy language unambiguously excludes J.A.'s transport costs. *Kirkland Grp. v. Sentinel Ins. Co.*, No. 20-CV-496-DPJ-FKB, 2021 WL 2772561, at *3–5 (S.D. Miss. June 29, 2021). But BCBS demands too much at the pleading stage. Anderegg need not definitively establish that J.A.'s transport was "emergency or urgent care" or that it was "Medically Necessary." For now, the question is whether his allegations, taken as true, rise above a "sheer possibility" of coverage. *Iqbal*, 556 U.S. at 678. They do.

First, Anderegg plausibly alleges that J.A.'s condition required "emergency or urgent care." [5-1] at 7. BCBS argues that the physician recommending air transport alone cannot satisfy this requirement. [6] at 7. True enough, but Anderegg alleges facts that otherwise satisfy the emergency-care exception's plain language. The exception applies when a "reasonable and prudent layperson" could expect absence of treatment to result in serious jeopardy to the insured's health;

serious impairment to bodily function; or serious dysfunction of any body part. [5-1] at 100–01. Anderegg alleges J.A. had myocarditis requiring treatment by a pediatric cardiologist, that the nearest specialist was more than 100 miles away, and that J.A.'s elevated troponin levels required immediate assessment. [3] ¶ 5–6. Taken as true, these allegations support a reasonable inference that delaying treatment could cause serious harm. Anderegg therefore plausibly alleges that J.A.'s transport falls within the emergency-care exception.

Next, Anderegg plausibly alleges that the air transport was "Medically Necessary." BCBS primarily argues that the plan explicitly states that a physician's "[prescription], order, recommendation, or approval of a service does not, of itself, make it Medically Necessary or a Covered Service." [6] at 8; [5-1] at 81. It also relies on the plan's requirements for non-emergency ambulance coverage. *Id.* But, as discussed above, the [3] Amended Complaint plausibly alleges the emergency-care exception applies. Anderegg therefore need only plausibly allege that air transport was "Medically Necessary" because J.A.'s physical condition, the terrain, and the distance rendered it necessary. [5-1] at 53.

BCBS argues Anderegg's claim fails because the plan provides that a physician's recommendation does not, "by itself," guarantee coverage. Reply [9] at 10; [6] at 8. But that argument improperly narrows the pleading standard and ignores the [3] Amended Complaint's additional allegations. Although the physician's order alone may not establish medical necessity, it supports a plausible claim of coverage at this stage. The [3] Amended Complaint also relies on the

severity of J.A.'s condition and that ground transportation would cause significant delay. [3] ¶¶ 4–6, 10. Taken as true, Anderegg plausibly alleged that air transport was in accordance with generally accepted standards, appropriate given J.A.'s condition, and more likely to produce the desired result than available alternatives. [5-1] at 104.

Last, Anderegg sufficiently alleges that J.A.'s condition and distance required air transport. *Id.* at 53; *see* [3]. To approve air transport, the plan requires specific facts beyond medical necessity, including evidence of the terrain, the insured's physical condition, the travel distance, or other critical circumstances. *Id.* Anderegg alleges that the nearest pediatric cardiologist was over 100 miles away, J.A.'s elevated troponin levels suggested a serious condition, and no truck was available. [3] ¶¶ 5–6, 10. Although BCBS characterizes these facts as mere logistical inconvenience, each fall within the plan's express criteria. *Id.*; *see* [5-1] at 53. Taken as true, Anderegg plausibly establishes that J.A.'s condition, the distance, and limited ground-transportation options made air transport "Medically Necessary."

BCBS's [9] Reply contends that *Kirkland Grp.* "is instructive." The Court disagrees. This Court dismissed a similar claim in *Kirkland Grp.* but on vastly different facts. *See generally Kirkland Grp., Inc. v. Sentinel Ins. Co. Ltd.*, No. 3:20-CV-496-DPJ-FKB, 2021 WL 2772561 (S.D. Miss. June 29, 2021). There, the insured sought to fit a virus into an insurance policy covering fire; lightning; explosion; windstorm or hail . . . falling objects; ice or sleet; and water damage. *Id.* at *3. (citation modified). The plaintiff argued that a virus causes damage through an

"explosion," like a cough or sneeze, or "falling objects," including "shedding virus from skin or through respiratory droplets." *Id.* But Anderegg's allegations do not require creative thinking like this. He alleges specific facts about J.A.'s condition and its severity that, when taken as true, a reasonable and prudent person could find fall within the plan's coverage.

For these reasons, the Court finds that Anderegg states a breach-of-contract claim against BCBS. Count I may proceed.

B. Bad Faith

Anderegg fails to state a bad-faith breach-of-contract claim. "A bad faith refusal claim is an 'independent tort'" separate from the underlying contract claim. *Evans v. Safeway Ins. Co.*, No. 1:12-CV-222-HSO-RHW, 2013 WL 3873043, at *5 (S.D. Miss. July 25, 2013) (quoting *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 895 (Miss. 2006)). To prevail, Anderegg must show (1) "that the claim or obligation was in fact owed," (2) that BCBS "has no arguable reason to refuse to pay the claim or to perform its contractual obligation," and (3) that BCBS's "breach of the insurance contract results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (citation modified). An arguable basis means the insurer's conduct does not rise to the level of an independent tort, and the investigation must be so deficient that a proper investigation would easily reveal the defense lacks merit. *Windmon v. Marshall*, 926 So. 2d 867, 873 (Miss. 2006). Plaintiffs bear the burden of proving an insurer

acted in bad faith when it denied their claim. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citation modified).

Anderegg fails to sufficiently allege facts that BCBS's denial constitutes an independent tort. A mere coverage dispute does not support a bad-faith claim against the insurer, nor does an insurer's denial of a claim later found wrongful justify punitive damages. *King v. Certain Underwriters at Lloyd's London*, No. 1:22-CV-224-LG-RMP, 2022 WL 16597163, at *2 (S.D. Miss. Nov. 1, 2002) (citing *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 634 (5th Cir. 2015)); *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985) (citation modified). Anderegg alleges only conclusory assertions that the denial lacked a legitimate or arguable basis; was "erroneous, egregious, and bad faith"; and was "fraudulent[], malicious[], oppressive[], and egregious[]." [3] ¶¶ 18–19, 24–26. Without facts showing malice or gross negligence sufficient to constitute an independent tort, Anderegg fails to state a bad-faith claim.

And BCBS provided an arguable basis for denying coverage. Although brief, the denial included an Explanation of Benefits clarifying that the plan excludes non-emergency services provided outside Oklahoma. [3-2]. Dismissal is warranted when a complaint lacks facts supporting bad faith and the insurer provides a reasonable basis for the denial. *See Deloach v. Allstate Vehicle & Prop. Ins. Co.*, 4:18-CV-141-DMB-RP, 2019 WL 1440298, at *3 (N.D. Miss. Mar. 29, 2019). BCBS explained to Anderegg that the services occurred "out-of-area" and fell outside the emergency-care exception. [3-2]; *see* [6]. Even if BCBS's interpretation is incorrect,

precedent instructs that it is not unreasonable enough to constitute an independent tort.

Anderegg contends his claim parallels *Loshelder*. [8] at 19. There, the plaintiff alleged that the insurer "summarily ignored" hail-damage markings in its adjuster's report and that a proper investigation would "easily reveal" the damage. *Loshelder v. Allstate Prop. & Cas.*, 820 F. Supp. 3d 400, 444 (S.D. Miss. 2026). This Court held that allegations an insurer ignored proof of covered damage could support a bad-faith claim. *Id.* at 445. Anderegg alleges no comparable facts. Rather than point to ignored evidence suggesting bad faith, he primarily challenges BCBS's interpretation of the plan. *See generally* [3]. Even if that interpretation proves too narrow, Anderegg alleges no facts showing bad faith.

Because Anderegg alleges only conclusory statements of bad faith and BCBS provided an arguable basis for denying coverage, the Court dismisses Count II.

C. Willful Breach of Contract

For similar reasons, Anderegg fails to state a claim for willful breach of contract. Mississippi courts treat willful or intentional breach-of-contract claims as "tortious" and require more than mere breach. *Loshelder*, 820 F. Supp. at 445; *Finkelberg v. Luckett*, 608 So. 2d 1214, 1220 (Miss. 1992). Plaintiff must allege "some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *Id.*; *Ronnie Malatesta Sales, LLC v. Hey Dude, Inc.*, No. 3:24-CV-19-SA-JMV, 2025 WL 1261611, at *10 (N.D. Miss. Apr. 30, 2025) (citation modified). As discussed above, Anderegg alleges no facts showing intentional wrongs or gross

negligence. Instead, the [3] Amended Complaint merely recites the standard, asserting that the failure to pay benefits constituted a "willful breach." That conclusory allegation does not establish an independent wrong.

Anderegg again mistakenly relies on *Loshelder*, in which the Court held that allegations of an insurer ignoring multiple reports, failing to properly test the roof, and failing to explain its denial plausibly alleged gross negligence. *Loshelder*, 820 F. Supp. 3d at 445–46. The [3] Amended Complaint contains no comparable allegations. BCBS reasonably interpreted its plan and explained its decision to Anderegg. Even assuming a breach of contract, no allegations plausibly suggest independent wrong, insult, abuse, or gross negligence.

Anderegg fails to plausibly state a claim for "willful breach of contract." Thus, the Court dismisses Count III.

IV. Conclusion

For the reasons above, the Court finds that Anderegg plausibly alleges a breach-of-contract claim but fails to allege facts supporting his bad-faith and tortious breach claims.

The Court GRANTS in part and DENIES in part BCBS's [5] Motion to Dismiss. The Court dismisses Counts II and III; Count I proceeds.

SO ORDERED, this 22nd day of September, 2026.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE